## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ALEXANDER ARON,** | : | |
| **502 N. 4ᵗʰ Street** | : | **CIVIL ACTION** |
| **Allentown, PA 18102,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **No.** |
| **vs.** | : | |
| | : | |
| **OFFICER JASON AMMARY,** | : | |
| *Individually and in his official capacity as a* | : | |
| *member of the Allentown Police Department* | : | |
| **425 Hamilton Street** | : | |
| **Allentown, PA 18101,** | : | |
| | : | |
| **OFFICER ANDREW HOLVECK,** | : | |
| *Individually and in his official capacity as a* | : | |
| *member of the Allentown Police Department* | : | |
| **425 Hamilton Street** | : | |
| **Allentown, PA 18101,** | : | |
| | : | |
| **OFFICER ALEXANDER BOEHM,** | : | |
| *Individually and in his official capacity as a* | : | |
| *member of the Allentown Police Department* | : | |
| **425 Hamilton Street** | : | |
| **Allentown, PA 18101,** | : | |
| | : | |
| **OFFICER ANTHONY BOWLAND,** | : | |
| *Individually and in his official capacity as a* | : | |
| *member of the Allentown Police Department* | : | |
| **425 Hamilton Street** | : | |
| **Allentown, PA 18101,** | : | |
| | : | **Jury Trial Demanded** |
| **JOHN/JANE DOES 1-X,** | : | |
| *Individually and in their official capacities as* | : | |
| *members of the Allentown Police Department* | : | |
| **425 Hamilton Street** | : | |
| **Allentown, PA 18101,** | : | |

|  | : |
| --- | --- |
| **MAYOR EDWIN PAWLOWSKI,** | : |
| *Individually and in his official capacity as* | : |
| *Mayor of the City of Allentown* | : |
| **435 Hamilton Street** | : |
| **Allentown, PA 18101,** | : |
|  | : |
| **FORMER CHIEF JOEL FITZGERALD, SR.,** | : |
| **c/o Fort Worth Police Department** | : |
| **505 W. Felix Street** | : |
| **Fort Worth, TX 76115,** | : |
|  | : |
| **and** | : |
|  | : |
| **CITY OF ALLENTOWN,** | : |
| **435 Hamilton Street** | : |
| **Allentown, PA 18101,** | : |
|  | : |
| **Defendants.** | : |

## COMPLAINT

**NOW COMES**, the Plaintiff, **ALEXANDER ARON**, by and through his legal counsel, Robert E. Goldman, Esquire, and does hereby allege and aver the following:

## I.   JURISDICTION AND VENUE

1. This action is instituted under the United States Constitution, particularly under the provisions of the Fourth and Fourteenth Amendments, and under federal law, particularly the Civil Rights Act of 1871 hereinafter referred to as the "Act," as amended, 42 U.S.C. §§ 1981, 1983, 1985, 1986 and 1988.

2

2.     This Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1331, §
       1343(a)(3), § 1343(a)(4) and § 1367(a), regarding the principles of pendent
       and supplemental jurisdiction over related state law claims.

3.     Venue in the Eastern District is properly laid pursuant to 28 U.S.C. § 1391,
       insofar as the alleged unlawful conduct complained of in this Complaint,
       which forms the factual and legal basis of the Plaintiff's claims, arose
       within the geographical limits of this District in general and within the
       geographical limits of the City of Allentown, Pennsylvania, in particular.

## II.    PARTIES

4.     Plaintiff Alexander Aron (hereinafter "Aron" or "Plaintiff") is an adult
       individual, who has a home address of 520 N. 4th Street, Allentown, Lehigh
       County, Pennsylvania, 18102.

5.     Defendant Officer Jason Ammary (hereinafter referred to as "Ammary")
       is an adult individual who, at all times relevant hereto, was serving in his
       capacity as a sworn officer of the Allentown Police Department, and was
       entrusted with the power to enforce the laws of the Commonwealth of
       Pennsylvania and the Ordinances of the City of Allentown.  Defendant
       Ammary was entrusted to protect the Constitutional rights of those he
       encountered, and at all times relevant hereto, was acting under the
       authority and color of law, and in concert with one or more of the other

3

individual Defendants in the performance or conduct of their actions, or acted independently of them.

6.    Defendant Officer Andrew Holveck (hereinafter referred to as "Holveck") is an adult individual who, at all times relevant hereto, was serving in his capacity as a sworn officer of the Allentown Police Department, and was entrusted with the power to enforce the laws of the Commonwealth of Pennsylvania and the Ordinances of the City of Allentown. Defendant Holveck was entrusted to protect the Constitutional rights of those he encountered, and at all times relevant hereto, was acting under the authority and color of law, and acted in concert with one or more of the other individual Defendants in the performance or conduct of their actions, or acted independently of them.

7.    Defendant Officer Alexander Boehm (hereinafter referred to as "Boehm") is an adult individual who, at all times relevant hereto, was serving in his capacity as a sworn officer of the Allentown Police Department, and was entrusted with the power to enforce the laws of the Commonwealth of Pennsylvania and the Ordinances of the City of Allentown. Defendant Boehm was entrusted to protect the Constitutional rights of those he encountered, and at all times relevant hereto, was acting under the authority and color of law, and acted in concert with one or more of the

4

other individual Defendants in the performance or conduct of their actions, or acted independently of them.

8.    Defendant Officer Anthony Bowland (hereinafter referred to as "Bowland") is an adult individual who, at all times relevant hereto, was serving in his capacity as a sworn officer of the Allentown Police Department, and was entrusted with the power to enforce the laws of the Commonwealth of Pennsylvania and the Ordinances of the City of Allentown.    Defendant Bowland was entrusted to protect the Constitutional rights of those he encountered, and at all times relevant hereto, was acting under the authority and color of law, and acted in concert with one or more of the other individual Defendants in the performance or conduct of their actions, or acted independently of them.

9.    Defendant(s) John/Jane Does 1-X (hereinafter referred to as "Doe") are adult individual(s) who, are presently unknown but, who at all times relevant hereto, was/were serving in his/her/their capacity as a sworn officer(s) of the Allentown Police Department, and was/were entrusted with the power to enforce the laws of the Commonwealth of Pennsylvania and the Ordinances of the City of Allentown. Defendant(s) Doe was/were entrusted to protect the Constitutional rights of those he/she/they encountered, and at all times relevant hereto, was/were acting under the

5

authority and color of law, and in concert with one or more of the other individual Defendants in the performance or conduct of their actions, or acted independently of them.

10. Defendant Mayor Edwin Pawlowski (hereinafter referred to as "Mayor Pawlowski") is an adult individual who is an elected official of the City of Allentown and is in direct supervision of the Police Department and its sworn members, and also of the selection of supervisory personnel for the Allentown Police Department, who are, in turn, by and through him, responsible for the formulation and/or implementation of practices, policies, customs and procedures, as well as the day-to-day operation and oversight, including command and control, of all segments of the Allentown Police Department. Mayor Pawlowski either does, or has failed to, promulgate and enforce laws, rules and regulations concerning the operations of the Allentown Police Department and who at all times relevant hereto, was acting within the scope of his duties and authority, under color or title of state or municipal public law or ordinance, and supervised or controlled one or more of the other Defendants herein, in their conduct or actions, or inactions, or acted in concert with them, in the performance of their conduct or actions. It is believed, and therefore averred that Defendant Mayor Pawlowski, exercises/exercised authority

6

over the selection, staffing, retention, training, promotions, discipline and operational functions of the Allentown Police Department, with the final and unreviewable decision making authority of a policymaker.

11. Defendant Former Chief Joel Fitzgerald, Sr. (hereinafter referred to as "Chief Fitzgerald") is an adult individual who, at all times relevant hereto, up until on or about October 18, 2015, was a sworn member of the Allentown Police Department with the rank of Chief who was responsible for the formulation and/or implementation of practices, policies, and procedures, discipline and assignment of officers, hiring and firing, as well as the day to day operation and overseeing and command and control of all segments of the Police Department, and who at all times relevant hereto was acting within the scope of his duties and authority, under color or title of state or municipal public law or ordinance and supervised or controlled one or more of the other Defendants herein in their conduct or actions, or acted in concert with them in the performance of their conduct or actions, or acted independently. It is believed, and therefore averred that Defendant Fitzgerald, along with Defendant Pawlowski, at pertinent times, were the ultimate authorities for the staffing, promotions, discipline and/or operational functions of the Allentown Police Department, with the final and unreviewable decision making authority of policymakers.

12.     Defendant City of Allentown (hereinafter referred to as the "City") is a
        municipal corporation, City of the Third Class, and governmental entity
        within the Commonwealth of Pennsylvania, empowered to establish,
        regulate, and control its Police Department for the enforcement of laws and
        ordinances within its jurisdiction, and for the purpose of protecting and
        preserving the persons, property and the Constitutional rights of
        individuals within the geographical and legal jurisdiction of the Defendant
        City.

## III.   PRE-DISCOVERY FACTUAL ALLEGATIONS

13.     On Monday October 27, 2014 at approximately 8:15 p.m., Plaintiff
        Alexander Antonio Aron was returning from a neighbor's home one door
        away on the South side of Liberty Street to his own home at 502 N. 4th
        Street, on the North side of Liberty Street.

14.     In the process, Plaintiff observed the arrival of approximately three marked
        police vehicles which parked near his home.

15.     As Plaintiff began to walk up his porch steps, Defendant Officer Andrew
        Holveck exited one of the vehicles and directed him to "stand there."

16.     Plaintiff immediately complied.

17.     Defendant was quickly surrounded by three other police officers who were
        unknown to him but, pending formal discovery, are now believed to be

8

Defendant Officers Jason Ammary, Alexander Boehm, and Anthony Bowland.

18. The Plaintiff politely responded by asking why he was being stopped and that he was merely entering his own home.

19. Defendant Holveck asked Plaintiff what his name was, to which Plaintiff replied by stating his full given name, Alexander Antonio Aron.

20. Defendant Holveck told Plaintiff that there was a robbery at El Punto at 4th and Tilghman and that he fit the description of the perpetrator, who was described as "an Afro-American wearing sweats" and, that "the guy had a gun."

21. Plaintiff quickly replied that it's "not me."

22. Defendant Holveck then asked Plaintiff how old he was, and Plaintiff replied "22."

23. Defendant Holveck then asked to see his I.D.

24. Plaintiff responded that it was inside his home and that Defendant Holveck could ring the doorbell and ask Plaintiff's mother to retrieve it.

25. Defendant Holveck replied that, "You're a big boy, you don't need mommy."

26. With that, Defendant Bowland rang the doorbell, ostensibly to have Plaintiff's mother confirm the Plaintiff's identity.

9

27.     The Plaintiff's mother answered the door and confirmed both that the Plaintiff was her son Alexander Aron and that he resided there with her.

28.     Eventhough Defendant Holveck had the confirmation of Plaintiff's identity which he sought, he demanded that Plaintiff retrieve his student I.D. from his home.

29.     It soon became apparent that Defendant Holveck's true motivation for requesting further identification was so that he, Holveck, could conduct a Constitutionally impermissible (plain view) search of Plaintiff's home.

30.     Plaintiff entered his home and Defendant Holveck followed him in, prompting Plaintiff to state to Defendant Holveck that he shouldn't come in without a warrant; but that did not deter Defendant Holveck from following the Plaintiff through his home, in violation of Plaintiff's Fourth Amendment rights.

31.     Plaintiff then brought his I.D. out to the porch and handed it to Defendant Holveck. It was Plaintiff's Alvernia University I.D. card. (Plaintiff did not have a driver's license).

32.     Plaintiff was asked again by Defendant Holveck what his name was.

33.     Plaintiff recognized at this time that Holveck did not believe that he was a robbery suspect, knew that it was his own home that they had entered, knew that Plaintiff knew right where his I.D. was located, Defendant

10

Holveck knew the I.D. matched Plaintiff's name, address and date of birth; and Plaintiff justifiably concluded that he was stopped and being harassed for merely being black.

34. Plaintiff responded to Holveck that his name was "on my I.D."

35. With that, Defendant Holveck shouted, "Put your hands behind your back, you're under arrest."

36. Plaintiff responded, "For what?"

37. Defendant Holveck did not respond, but instead grabbed Plaintiff's right arm and twisted it behind Plaintiff, and placed a cuff on his right wrist.

38. Almost simultaneously, Defendant Ammary grabbed Plaintiff's left arm and pushed it upward beyond its normal limits and then Ammary and Defendant Holveck together threw Plaintiff forcibly forward, face first onto the porch floor.

39. All of the Defendant Officers then jumped on the back of Plaintiff, and his left wrist was then handcuffed to his already cuffed right wrist.

40. The Defendants began punching and kneeing and hitting the Plaintiff who laid helpless, in handcuffs, on the porch floor.

41. The Plaintiff's sister, mother and grandmother who were on the porch began yelling "what are you doing," that the Defendants were hurting Plaintiff, to stop, that he wasn't resisting, and words to that effect.

42.   While Aron couldn't move Defendant Holveck repeatedly drove his knee into Plaintiff's back and proceeded to violently and viciously choke Plaintiff.

43.   Plaintiff could not breathe and was gasping for air while his family and now passers-by, were shouting things like "Stop!", "Why are you doing this?", "He's not doing anything!", "He's not like that!", "What are you doing?", "He has asthma, he can't breathe!", etc.

44.   Plaintiff did not, and could not, present the Defendants with any threat or resistance, nor did he require any force to handcuff, subdue or arrest; he was absolutely compliant and defenseless.

45.   Not satisfied with the terrible pain and life-threatening acts they were already inflicting upon Plaintiff, Defendant Holveck shouted to Defendant Ammary, "Tase, Tase."

46.   Whereupon, Defendant Ammary Tased the helpless Plaintiff in drive stun on at least three continuous occasions, while the Plaintiff was being held down on the porch by the other Defendant Officers.

47.   Plaintiff screamed, "They're Tasing me!  They're Tasing me!"

48.   The crowd that had gathered and were viewing this horrific spectacle also pleaded for the Defendants to stop their vicious assault upon the Plaintiff, which now included the sadistic use of a Taser by Defendant Ammary.

12

49.   Plaintiff's mother pleaded, "Stop, stop you're going to kill him, he has asthma!"

50.   Nonetheless, the Defendants, and each of them assisted in the criminal assault being made upon Plaintiff who was providing no resistance and no threat to them.

51.   Defendant Ammary finally discontinued his Taser assault upon Plaintiff, and turned his rage upon other innocent members of the public who had lawfully gathered on the public street and sidewalk and who were eye witnesses to the assault upon Plaintiff.

52.   One of those innocent bystanders who was in the vicinity of 502 N. 4th Street, Plaintiff's home, at about 8:22 p.m. on October 27, 2014, was Eli Heckman, a person unknown to Plaintiff.

53.   Heckman was on the public sidewalk, which he was lawfully entitled to traverse, when his attention was drawn to Allentown police officers relentlessly assaulting Plaintiff on his porch.

54.   Because of the apparent excessive and unnecessary nature of the police assault on this person, and the blood curdling screams coming from the porch, Heckman began to film the conduct with his cell phone. (Several other citizens were also in the area and believed to be filming the incident).

55.   Heckman had not only the right to film the Allentown police officers'
      actions as public servants, but given what he perceived to be violations of
      the officers' duties to protect and serve citizens, rather than to harm them,
      he believed that it was his moral obligation to attempt to memorialize the
      event so that he could disseminate it to the Courts, the Press and any other
      person who may be in a position of authority to investigate, punish and
      deter such police misconduct in the future.

56.   Heckman was not a participant in the events leading up to the police
      assault, and the victim of the assault, which he was filming, was unknown
      to him.

57.   At no time did Heckman's use of his cell phone to film the incident
      interfere with or obstruct, in any manner, the actions of any police officer,
      nor, most especially, did he interfere with the events he was recording.

58.   Heckman was located off of the porch and on the public sidewalk when
      multiple officers were circled around Aron on the porch and he was being
      Tased, while he was face down screaming in pain.

59.   While filming, Heckman was accosted by Defendant Ammary.

60.   Defendant Ammary demanded that Heckman stop filming the event and to
      leave.

61. It was readily apparent to Heckman that Defendant Ammary told him to stop filming because he did not want him to be able to memorialize the horrific police abuse of Aron, and for no other reason.

62. Heckman responded by stating, "There is no reason why I can't watch (film) this." In point of fact, Heckman was on the public sidewalk where he had a right to be and he believed that he was within his rights as an American citizen to film matters that were plainly visible in public places, especially when doing so serves the public purpose of capturing misconduct of police officers.

63. When a still enraged Defendant Ammary approached Heckman and told him to stop filming, Heckman put his phone down by his side, and began to walk away from the scene as directed.

64. Defendant Ammary stated, "Get off the block," to which Heckman stated, "I'm walking, I'm walking," multiple times.

65. While Heckman continued to walk away, as directed, Defendant Ammary responded by grabbing and shoving Heckman in an extremely rough manner, twisting his arms painfully behind his back, throwing him into a nearby car, taking his cell phone, and handcuffing him while his arms were painfully "chicken-winged" behind his back.

66. During this process, Heckman screamed in pain, "Stop! What are you doing?" and, "I was walking." Defendant Ammary called Heckman an "asshole" and screamed, "Give me your fucking hands."

67. After Defendant Ammary called Heckman an "asshole," Ammary realized the cell phone was still recording, and Ammary stopped it.

68. After stopping the recording, Defendant Ammary smashed the phone into the ground in an attempt to break the phone and destroy the evidence of the assault upon Aron, as well as the unlawful assault, arrest and treatment of Heckman by Ammary.

69. Heckman continued to tell Defendant Ammary that he was hurting him and again, Heckman asked Ammary why he was doing this to him. Defendant Ammary mumbled something about Heckman being an "asshole" for "videoing" and roughly pulled and shoved him into an Allentown police car parked nearby.

70. Defendant Ammary transported Heckman to the Allentown Police Department and placed him in a jail cell.

71. In the process of transporting Heckman, Ammary said to him, "why did you have to videotape? Now you're fucked."

72. Heckman remained in the jail cell for some time.

73. Heckman was then released and Defendant Ammary swore out a false Police Criminal Complaint against Heckman charging him with the fabricated crimes of "Failure of Disorderly Persons to Disperse Upon Official Order," an alleged violation of Section 5502 of the Pennsylvania Crimes Code, and "Disorderly Conduct," a misdemeanor of the third degree under section 5503(a)(4) of the Pennsylvania Crimes Code.

74. All those charges were subsequently dismissed at a Preliminary Hearing, and Heckman thereafter successfully sued the City for Ammary's federal civil rights violations.

75. While Defendant Ammary was abusing and arresting Heckman and trying to destroy evidence, Defendants Bowland and Boehm took Aron to Bowland's marked patrol vehicle and transported him to police headquarters and placed him in a jail cell.

76. Aron was noticeably injured, in pain, and spitting blood.

77. Aron was provided no medical attention at police headquarters.

78. Aron's only visit by a nurse was to give him a TB shot and to draw his blood. She said she could not provide him treatment for his injuries.

79. Aron was subjected to a video arraignment on charges fabricated by Defendant Holveck, to wit; Resisting Arrest 18 Pa. C.S.A. § 5104, a Misdemeanor of the Second Degree; Disorderly Conduct – 18 Pa. C.S.A.

5503(a)(4), a Misdemeanor of the Third Degree; Consumption of Alcohol on Streets/Sidewalks – Allentown City Ordinance 711.08, a Summary Offense; and, Public Drunkenness – 18 Pa. C.S.A. § 5505, a Summary Offense.

80. Aron was advised that he had to remain locked up unless or until someone could post $7,500.00 bail.

81. Aron remained imprisoned until approximately 11 a.m. the following day when his mother posted the bail.

82. The force employed by Defendants was unreasonable and excessive, and totally unwarranted and unnecessary, and caused serious pain and suffering, and permanent damage to Plaintiff.

83. Plaintiff was on the ground and providing no threat or resistance to the Defendants when Defendants decided to viciously strike him, and when Defendant Ammary decided to Tase Plaintiff at least three times, without interruption.

84. The other Defendant Officers watched the unlawful Tasering, and in fact lent their assistance to same by restraining Plaintiff, but failed to restrain Defendant Ammary, or intervene, in any way, even though they had the clear opportunity, and it was their duty as a police officer to do so.

85. Defendants John and Jane Does also failed to intervene eventhough they had a reasonable opportunity and an obligation to do so.

86. All Defendant Officers filed false police reports to cover-up the assault, and they fabricated facts and, omitted material facts, to do so.

87. Defendant Officers had the duty as an APD police officer to report the true nature of their unwarranted assault on Plaintiff but did not, in order to cover-up the illegal conduct.

88. The APD Internal Affairs Division, responsible to investigate all use of force incidents by police, assisted in the cover-up by continuing the charade that Plaintiff was an assaultive and high level moving resistor, when it well knew, and should have known through minimal investigation, that Plaintiff was a defenseless victim of an unconstitutional police assault.

89. Plaintiff's physical injuries included, *inter alia*; injuries to Plaintiff's head, face, neck, chest, back, abdomen, legs and eyes.

90. Plaintiff may continue to require medical treatment into the indeterminate future, with some issues potentially being permanent in nature.

91. Due to the events of that night, Plaintiff has also suffered serious psychological damage which requires treatment, and which will continue into the future.

92.   The Defendant Officers and most especially Defendant Ammary, have a history of violence and Constitutional violations that were known to their supervisors, policy-makers, and Defendant City. This history has gone undisciplined and, in essence, the Defendants' past actions were condoned and encouraged by their supervisors and the City, leading to the Constitutional violations complained of in this action.

93.   After Ammary's Taser assault on Aron, and after Ammary's physical assault on Eli Heckman as discussed hereinbefore, in both cases he then engaged in a scheme, plan and design to assist in covering up his outrageous conduct by, *inter alia*, the filing of false police reports, lying about the incident, and maliciously prosecuting the victims on false and fabricated charges.

94.   Eventhough Ammary's physical abuse was supported by independent eye-witnesses, and eventhough it was fully disclosed in a federal civil rights lawsuit filed against him in the United States District Court For The Eastern District Of Pennsylvania at case number 15-cv-04184, no discipline of any kind was imposed upon Ammary, nor any other of the APD personnel that assisted in covering up the clearly unconstitutional conduct.

95. It is believed and therefore averred that the Internal Affairs Division of the APD engaged in a cover-up of the Heckman case, just as it has in the instant assault.

96. Equally telling is the fact that, of the numerous investigations which were supposedly conducted into the Defendant Officers misconduct over the last years, it is believed and therefore averred, that none were determined to be founded, (when some, at least, clearly warranted disciplinary action and/or retraining) and no disciplinary action resulted.

97. No appropriate investigation was undertaken and no discipline was issued by Mayor Pawlowski, the then Chief of Police, or any supervisor regarding the clear Constitutional violations committed by Defendant Officers against Plaintiff (or Heckman) on October 27, 2014.

98. This lack of appropriate investigation and discipline was a long-standing practice and custom of APD and further evidences that supervisors and decision-makers such as Defendants Pawlowski and Fitzgerald, were not only deliberately indifferent, but that violations of citizens' Constitutional rights were condoned, if not encouraged, by supervisors and decision makers of the City of Allentown, and became a custom or *de facto* policy within the Police Department.

99.   The Allentown Police Department and City of Allentown provided inadequate training to Defendants pertaining to the appropriate use of force to employ in given circumstances, and concerning when and how to effect an arrest, and when to intervene to stop unlawful use of force by a fellow officer, like that which the Defendants encountered on the night in question; and, no appropriate remedial training for these Defendants was provided.

100.  Upon information and belief, the Allentown Police Department routinely used excessive force in the performance of their duties, and with perhaps a single exception, no disciplinary action was taken in any of those instances.

101.  Prior to the incident giving rise to Plaintiff's Complaint, the written policies that existed regarding the appropriate use of force to be utilized in circumstances akin to those encountered here and commonly encountered by law enforcement, were routinely ignored and this abuse was accepted as the common practice and custom within the Department.

102.  Despite repeated incidents/complaints of excessive use of force committed by Allentown Police Officers, no significant efforts were made to establish or ensure actual proper use of force standards within the Police

Department. No efforts were made to ensure citizens' Constitutional rights were not violated.

103. The Internal Affairs division routinely operated, not to make legitimate inquiry into police wrongdoing, but as a vehicle to cover-up, falsely justify, and otherwise exonerate police misconduct, thereby ensuring its perpetuation.

104. This custom and *de facto* policy supported an ongoing culture within the Allentown Police Department which not only condoned, but encouraged, the sort of constitutional violations which occurred here, with each Defendant knowing that his conduct would go unpunished and undeterred.

105. The aforesaid acts and omissions of the Defendants, or one or more of them, evidence a deliberate indifference to the rights guaranteed to individuals, such as Plaintiff, under the Fourth and Fourteenth Amendments to the United States Constitution.

106. At all times relevant hereto, the legal principles regarding the rights of persons, such as Plaintiff, to be free from the excessive use of force by a police officer, and/or his discriminatory conduct, to be free from unlawful seizure, to be free from unlawful search, and the contours of those Constitutional and statutory rights, were well established, and it was not

reasonable for the Defendants to believe that their actions would not deprive the Plaintiff of those rights.

107. The actions of the Defendants violated the clearly established and well-settled federal Constitutional rights of Plaintiff as more clearly set forth in the Counts below.

108. Plaintiff did not physically resist, threaten or assault the Defendants in any way, and the force used against Plaintiff was totally and completely unnecessary, unreasonable, excessive and outrageous, warranting the award of both compensatory and punitive damages against the Defendant officers in their individual capacities.

109. At no time during the events described above was Plaintiff a threat to the safety of himself or others. To the contrary, he was peacefully complying with all officer requests at the time he was assaulted.

110. The Defendant City of Allentown, acting through its policy makers, routinely ignored citizens' complaints of officers' violations of citizens' Constitutional rights. In effect, it was communicated to the Department, and the public, that any attempt to reform the Department would be ineffectual and that the custom and practice of inflicting Constitutional abuses by members of the Allentown Police Department would remain intact.

111. The Allentown Police Department's citizen complaint protocol intentionally, and systematically cleanses and under-reports police abuse complaints by the citizenry, even as it institutionally deters them from being made, and even as it ignores them when made.

112. The instant case presents a prime example of the former.

113. Moreover, the APD's General Order's definition of "complaint" is so narrowly construed as to virtually eliminate from its definition any and all claims concerning the excessive use of force, and these complaints are systematically excluded from departmental statistics:

> "Non-complaints" are defined as those which result in potential civil liability as a result of any use of force by police officers, including especially reported excessive use of force."

114. In fact, the APD adopted General Orders and policies which themselves established the Department's deliberate indifference to the Constitutional rights of citizens like the Plaintiff.

115. One example is Subsection 2.5.11 E of the Allentown Police Department General Order 2.5 which expressly provides that Allentown police officers should investigate physical force complaints with the express purpose, not of determining whether a citizen's Constitutional rights have been

violated, but solely to assist the Department in the <u>defense</u> of any claimed misconduct:

> (1) "Incidents involving . . . . use of physical force provide a high potential for liability to the Department and its personnel.  In all such incidents, ***an immediate investigation shall be conducted into factual circumstances surrounding the incident to assist the Department in developing legal theories that can be advanced in defense of any resulting claims***, and to properly evaluate the potential for liability to which the Department or its members could be exposed."

116.  In other words, the Allentown Police Department and the City of Allentown have an actual, written policy which has as its goal, not the objective investigation of citizens' complaints (especially those involving the use of force) or truth-finding, but the defending and "clearing" of the City and its officers accused of wrongdoing.

117.  Furthermore, this same General Order is so deliberately indifferent to the Constitutional rights of any citizen who has claimed to have been the victim of excessive use of force that, the Order does not require, or even encourage, any interview of the victim of the excessive use of force,

leaving abusive officers free to unabashedly manufacture any details which exonerate them:

> (10) "During the investigation of a non-complaint incident, the investigator shall exercise discretion in determining if an aggrieved citizen should be interviewed." 2.5.11 E

118. The Allentown Police Department and the City of Allentown, intentionally, and with deliberate indifference, by policy, do the absolute minimum investigation, including, *inter alia*, refraining from interviewing key witnesses, neglecting to obtain and review video surveillance, and, instead, actively assist in creating a story to justify the officers' violations.

119. In effect, the Allentown Police Department and the City of Allentown, acting through its policy-makers and supervisors, have institutionalized a policy to cover-up police wrongdoing, or at the very least turn a blind eye to the wrongdoing, sending a message to both the Department and the public at large, that Constitutional violations will not only go unpunished but will be tolerated, if not encouraged by the City and the police administration.

120. In fact, the Defendants' deliberate indifference to the Constitutional rights of its citizens to be free from the excessive use of force was admitted in official court filings by the City of Allentown's and APD's agent and

attorney, John P. Morgenstern, Esquire, who represented on the record, to the Court in the case of *Angel Guerrido-Lopez v. Howells, III, et al.*, that, as of July 18, 2016, the City of Allentown had no readily available means to keep track of, nor retrieve information regarding, which officers were the subject of excessive force complaints, what recordings or videotapes existed which may have depicted the officer's abusive conduct, what internal investigations may have been conducted regarding any specific officers, or other matters pertinent to operating a police department within Constitutional boundaries.

121. Morgenstern acknowledged that even after a year of concerted effort by him personally, the APD Office of Professional Standards and the APD as a whole, did not have the ability, and did not have the procedure, to obtain audio and video recordings in the possession of APD that relate to specific investigations conducted regarding alleged police misconduct.

122. It is clear that the supervisors and decision-makers within the City and Department, including Defendant Chief Fitzgerald and Defendant Mayor Edwin Pawlowski, could not properly access, monitor, assess and correct the Department's culture and custom of the use of excessive force if the information necessary to do so was, as Morgenstern asserted (as agent for the City, the Mayor and the Chief), was not readily available to them; and,

that they did nothing to make it readily available in a system which placed a premium upon the difficulty required to retrieve their essential information.

123. This constitutes deliberate indifference *per se* and a complete abdication of supervisory and decision-making responsibility.

124. The City, the Mayor, the APD and Chief Fitzgerald, among other decision makers and supervisors, failed to adopt and enforce reasonable and necessary policies and procedures to end the culture of abuse and of deliberate indifference to the rights and safety of citizens that had become the long-standing hallmark of the Allentown Police Department. The Defendants herein continued to encourage this custom and practice of deliberate indifference to the Constitutional rights of others by ignoring and even rewarding inappropriate actions, by failing to promulgate appropriate rules, regulations and policies; by failing to enforce existing rules and regulations; by failing to discipline; by inappropriate hiring, training, supervision and promotional practices; and by reinforcing the old culture of deliberate indifference.

125. At all times during the events described above, the Defendants were engaged in a joint venture. The individual Defendants assisted each other in performing the various actions described, and lent their physical

presence, support and the authority of their office to each other during the said events.

126. As a direct and proximate result of the said acts or omissions of the Defendant officers, made possible by and compounded by the other Defendants, the Plaintiff suffered, *inter alia*, the following injuries and damages:

   i. physical and mental pain and suffering, in both the past and the predictable future, including discomfort, loss of use of bodily function, ill health, loss of sleep, and other emotional injuries including stigma, humiliation, distress, fright, PTSD and emotional trauma;

   ii. medical and psychological expenses, past and future;

   iii. loss of life's pleasures;

   iv. general damages for violation of Plaintiff's Constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution and Article 1, Section 1, 8, and 9 of the Pennsylvania Constitution; and

   v. punitive damages (except as to the Defendants in their official capacities), which are justified factually and legally because the Defendants acted maliciously and/or wantonly in violating the

Plaintiff's Constitutionally (federal and state) protected rights, and intentionally, recklessly and willfully engaged in reprehensible and outrageous conduct not to be tolerated in a civilized society.

127. Plaintiff further seeks counsel fees and costs as authorized by statute.

128. The actions of the Defendants violated the clearly established and well-settled federal Constitutional rights of Plaintiff and, it would be unreasonable for any Defendant to believe that they were not violating such rights as more clearly set forth in the Counts below.

129. Plaintiff believes, and thus avers, that without the intervention of this Honorable Court, Plaintiff as well as others may suffer damages from similar Constitutional violations in the future, requiring injunctive relief.

130. The Defendants, individually and collectively, at all times pertinent to the claims asserted herein, acted under color of state law.

131. While acting under color of state law, the Defendants deprived Plaintiff of various state and federal Constitutional rights as more fully set forth herein.

## COUNT I
### 42 U.S.C. § 1983
### Excessive Force and Physical Brutality
### *Against Defendants and City (Monell)*

132. The preceding paragraphs are incorporated herein by reference as though fully set forth.

31

133. The Plaintiff was subjected to a seizure within the meaning of the Fourth Amendment through the application of force.

134. The application of force against the Plaintiff was unreasonable under the circumstances and unconstitutionally excessive.

135. The Fourth Amendment to the United States Constitution protects persons from being subjected to excessive force while being arrested even if the arrest is otherwise proper.

136. Defendant Officers used excessive force in the arrest of the Plaintiff in that there was absolutely no need for the application of any force, and in view of the fact that the amount of force actually used by the Defendants exceeded the amount of force which a reasonable officer would have used under similar circumstances, and force of a kind which violated the Allentown Police Department's own policies, deficient as they may otherwise be.

137. Accordingly, no physical force of any kind, was required or should have been employed against Plaintiff here who, at the very worst, could have been issued summary citations.

138. The Plaintiff was peacefully surrendering when he was initially assaulted by Defendants.

32

139. The Plaintiff did not present any threat to the Defendants nor any other persons or property at the time he was assaulted.

140. Defendants used excessive force in their encounter with the Plaintiff when Defendants Holveck and Ammary took him violently to the ground, when they and the other Defendants jumped on, hit and struck, arm-barred and kneed him, and when they assisted Defendant Ammary in Tasing him three times, most all of which occurred when Plaintiff was restrained and handcuffed.

141. The use of force was not reasonable under the Constitution where, as here, there was no need for any force, especially the force that was used.

142. The nature and degree of excessiveness utilized against the Plaintiff by Defendants was outrageous, reprehensible, malicious, vicious, intentional, and malevolent, and clearly warrants an award of punitive and compensatory damages.

143. As a result of the excessive use of force employed against the Plaintiff in violation of his Fourth Amendment rights, the Plaintiff suffered damages as stated herein.

144. Defendant Officers are liable for their personal involvement in the commission of the acts complained of here.

145. Defendant, the City of Allentown, is liable for the acts of Defendants pursuant to the claims of Municipal Liability (Monell), expressly set forth herein, and which are incorporated by reference as if set forth *et extenso* here.

146. Further, the conduct exhibited by subordinate municipal officers and employees, which occurred on October 27, 2014, was not unexpected. Neither were they the deeds of independent, non-supervisory actors. But, rather, they constituted predictable behaviors of subordinates who operated with perceived impunity due to the deliberate indifference of their supervisors and policymakers, and their joint policies, practices and customs, which operated as the moving force behind what the Officers believed to be their unaccountable efforts to engage in what had become, all too customary, Constitutional deprivations.

147. The likelihood is that, but for the alleged acts and omissions committed by the other Defendants, the injuries inflicted upon the Plaintiff would not have occurred.

**WHEREFORE,** Plaintiff respectfully requests that this Honorable Court award judgment in Plaintiff's favor and against all Defendants, jointly and severally, in an amount in excess of the One Hundred Fifty Thousand Dollar ($150,000.00) limit for arbitration in the Federal District Court for the Eastern District of

Pennsylvania, together with punitive damages against Defendants in their individual capacities and, such other relief, including injunctive relief, which the Court may find appropriate.

## COUNT II
### 42 U.S.C. § 1983
### Failure to Intervene
### *Against Defendant Officers, Does and City (Monell)*

148. The preceding paragraphs are incorporated herein by reference as though fully set forth.

149. Each of the Defendants is liable for failing to intervene to prevent the assaults upon Plaintiff and the Constitutional violations of Plaintiff's federally protected rights, at the hands of the other Defendants.

150. Plaintiff's Constitutional rights were violated as alleged herein.

151. Under the aforestated circumstances, whether Defendants were or were not themselves violating Plaintiff's rights, they had the duty to intervene, including the duty to intervene to prevent the use of excessive force by Defendant Ammary upon Plaintiff, if he had a reasonable opportunity to do so.

152. Defendants had a realistic and reasonable opportunity to intervene.

153. Defendants failed to intervene.

154. Accordingly, Defendants are is liable for all the harm, and hence damages, suffered by the Plaintiff, as stated herein.

35

155.   The likelihood is that, but for the alleged acts and omissions committed by Defendants, the injuries inflicted upon the Plaintiff by other Defendants would not have occurred.

156.   Defendants are jointly liable for their personal involvement in the commission of the acts complained of here.

157.   Defendant, the City of Allentown, is liable for the failure to intervene by Defendant Officers pursuant to the claims of Municipal Liability (Monell), expressly set forth herein, and incorporated by reference as if set forth *et extenso* here.

**WHEREFORE,** Plaintiff respectfully requests that this Honorable Court award judgment in Plaintiff's favor and against all Defendant Officers, Does, and City, jointly and severally, in an amount in excess of the One Hundred Fifty Thousand Dollar ($150,000.00) limit for arbitration in the Federal District Court for the Eastern District of Pennsylvania, together with punitive damages against Defendants in their individual capacities and, such other relief, including injunctive relief, which the Court may find appropriate.

## COUNT III
### 42 U.S.C. §1983
### Unlawful Search in Violation of Fourth Amendment
### *Against Defendant Holveck*

158.   The preceding paragraphs are incorporated herein by reference as though fully set forth.

36

159. Freedom from intrusion into the home or dwelling is the archetype of the privacy protection secured by the Fourth Amendment.

160. Warrantless searches are presumptively unreasonable under the Fourth Amendment.

161. Defendant Holveck violated Plaintiff's Fourth Amendment rights under 42 U.S.C. § 1983 by conducting a warrantless intrusion into, and plain view search of, Plaintiff's home on October 27, 2014, over Plaintiff's express objection.

162. Defendant Holveck lied about his unlawful entry into Plaintiff's home in his officially filed Offense Report claiming that, "Aron then walked inside his house and I followed at which time he said we do not have a warrant to enter his house. I then stopped at the door way and waited for Aron to come back outside to give me his I.D."

163. Defendant Holveck's false report is further evidence that he was aware that his conduct was unlawful and violated Plaintiff's Constitutional rights under the Fourth Amendment.

**WHEREFORE,** Plaintiff respectfully requests that this Honorable Court award judgment in Plaintiff's favor and against the Defendant Holveck, in an amount in excess of the One Hundred Fifty Thousand Dollar ($150,000.00) limit for arbitration in the Federal District Court for the Eastern District of Pennsylvania,

together with punitive damages against Defendant Holveck in his individual capacity and, such other relief, including injunctive relief, which the Court may find appropriate.

## COUNT IV
### 42 U.S.C. §1983
### Unlawful Seizure in Violation of Fourth Amendment
#### *Against Individual Defendants*

164. The preceding paragraphs are incorporated herein by reference as though fully set forth.

165. The conduct of the Defendants constituted an unlawful seizure of the Plaintiff, within the meaning of the Fourth Amendment.

166. Said seizure was made by warrantless arrest and was unreasonable and without probable cause in that the facts and circumstances available to the Defendants would not warrant a prudent officer in believing that the Plaintiff had committed or was committing a crime which would justify his arrest.

167. In his official Offense Report, Defendant Holveck stated that his placement of handcuffs upon Plaintiff was not an arrest and he specifically advised Plaintiff at the time "that he is under investigation ... I then advised Aron to turn around that he is not under arrest, I grabbed his right hand ..."

168. However, in is sworn preliminary hearing testimony Defendant Holveck stated that it was Plaintiff's failure to provide him with his date of birth

(eventhough Plaintiff had orally given his age and, eventhough Plaintiff had already given Defendant Holveck his college photo I.D. with the information on it) that prompted Holveck to grab Plaintiff's arm and arrest Plaintiff, allegedly stating to Plaintiff that he was going to be taken into custody for public drunk and open container.

169.  Plaintiff was subjected to an unlawful seizure and arrest in violation of the Fourth Amendment of the United States Constitution, under the facts of this case and under either justification alleged by Defendant Holveck.

170.  Plaintiff's unlawful seizure was also predicated upon fabricated evidence and a conspiracy designed to justify the unconstitutional conduct of the Defendants, or one or more of them.

171.  Moreover, the Defendants' assault upon Plaintiff as described hereinbefore, including Defendant Ammary's unconstitutional repeated Tasering of Plaintiff, constituted an unlawful seizure under well-established Fourth Amendment jurisprudence.

172.  As a result of the illegal entry upon Plaintiff's premises and unlawful seizure and arrest effected upon the Plaintiff, the Plaintiff suffered damages as stated herein.

173.  Defendant Officers are liable for their personal involvement in the commission of the acts complained of here.

174.    Defendants, the City of Allentown, Mayor Pawlowski and Chief Fitzgerald, are liable for the acts of the Defendant Officers pursuant to the claims of Municipal Liability (Monell), and Policymaker and Supervisory Liability expressly set forth herein, and which are incorporated by reference as if set forth et extenso here.

175.    Further, the conduct exhibited by the Defendant subordinate municipal officers and employees, which occurred on October 27, 2014, was not unexpected. Neither were they the deeds of independent, non-supervisory actors. But, rather, they constituted predictable behaviors of subordinates who operated with perceived impunity due to the deliberate indifference of their supervisors and policymakers, Pawlowski and Fitzgerald, and their joint policies, practices and customs, which operated as the moving force behind what the Officers believed to be their unaccountable effort to engage in what had become, all to customary, Constitutional deprivations, especially directed at a targeted member of the unprotected African-American community.

176.    The likelihood is that, but for the alleged acts and omissions committed by the other Defendants, the injuries inflicted upon the Plaintiff would not have occurred.

**WHEREFORE,** Plaintiff respectfully requests that this Honorable Court award judgment in Plaintiff's favor and against all Defendants, jointly and severally, in an amount in excess of the One Hundred Fifty Thousand Dollar ($150,000.00) limit for arbitration in the Federal District Court for the Eastern District of Pennsylvania, together with punitive damages against Defendants in their individual capacities and, such other relief, including injunctive relief, which the Court may find appropriate.

## COUNT V
## 42 U.S.C. §1983
## False Imprisonment
### *Against Individual Defendants*

177. The preceding paragraphs are incorporated herein by reference as though fully set forth.

178. The Defendants either individually, or acting in concert, subjected the Plaintiff to false imprisonment in violation of his Constitutionally protected Fourth Amendment rights.

179. The Defendants deliberately arrested and, thereafter, deliberately further detained the Plaintiff in custody.

180. Said detention was unlawful because it lacked probable cause.

181. The facts and circumstances, which were within the knowledge of the Defendants at the time of Plaintiff's arrest, were not sufficient to warrant

a man of reasonable caution to believe that Plaintiff had committed or was committing a crime for which an arrest was authorized under the law.

182. As a result of being subjected to False Imprisonment, in violation of his Constitutionally protected rights under the Fourth Amendment, Plaintiff suffered the damages alleged herein.

183. Defendant Officers are liable for their personal involvement in the commission of the acts complained of here.

184. Defendants, the City of Allentown, Mayor Pawlowski and Chief Fitzgerald, are liable for the acts of Defendant Officers pursuant to the claims of Municipal Liability (Monell), and Policymaker and Supervisory Liability expressly set forth herein, and are incorporated by reference as if set forth et extenso here.

185. Further, the conduct exhibited by Defendant subordinate municipal officers and employees, which occurred on October 27, 2014, was not unexpected. Neither were they the deeds of independent, non-supervisory actors. But, rather, they constituted predictable behaviors of subordinates who operated with perceived impunity due to the deliberate indifference of their supervisors and policymakers, Pawlowski and Fitzgerald, and their joint policies, practices and customs, which operated as the moving force behind what the Officers believed to be their unaccountable effort to

engage in what had become, all to customary, Constitutional deprivations directed at a targeted member of the unprotected African-American community.

186.  The likelihood is that, but for the alleged acts and omissions committed by the other Defendants, the injuries inflicted upon the Plaintiff would not have occurred.

**WHEREFORE,** Plaintiff respectfully requests that this Honorable Court award judgment in Plaintiff's favor and against all Defendants, jointly and severally, in an amount in excess of the One Hundred Fifty Thousand Dollar ($150,000.00) limit for arbitration in the Federal District Court for the Eastern District of Pennsylvania, together with punitive damages against Defendants in their individual capacities and, such other relief, including injunctive relief, which the Court may find appropriate.

**COUNT VI**
**42 U.S.C. § 1983**
**Civil Conspiracy**
***Against Individual Defendant Officers and Does***

187.  The preceding paragraphs are incorporated herein by reference as though fully set forth.

188.  The referenced Defendants participated in a conspiracy to violate the Plaintiff's Constitutional rights.

43

189. Direct evidence of conspiracy is rarely available and therefore, the existence of a conspiracy must usually be inferred from the circumstances.

190. Those circumstances establishing a conspiracy here are very compelling:

   a. The Defendant Officers were present and jointly committed unconstitutional assaults upon the Plaintiff and not one of them cautioned, restrained or prevented the other from engaging in this wrongdoing, even though the opportunity clearly existed to do so, and even though the obligation to do so also existed;

   b. The Defendant Officers acted fully in concert – one with the other, obviously demonstrating the common plan, scheme or design that they agreed upon, when the assaults occurred;

   c. The Defendant Officers agreed thereafter to fabricate, and did fabricate, a continued story wherein they either falsely depicted Plaintiff's acts as aggressive and assaultive, and jointly provided a sanitized version of their assaultive behaviors;

   d. The sole purpose of this fabrication was an attempt to excuse or otherwise justify and cover-up the unconstitutional assault upon Plaintiff and his Constitutionally guaranteed civil rights;

   e. The Defendants' conspiratorial acts continued and included aiding and abetting each other including Defendant Ammary's unconstitutional

44

Tasering of Plaintiff, and arrest of Heckman, and attempted destruction
of his cell phone recording of all the Defendants' unconstitutional acts,
which was designed to deter filming by other citizens and, also
designed to destroy incriminating evidence;

f. The Defendants' false reporting (or non-reporting) was done in concert
to avoid the detection of their unlawful and unconstitutional acts.

191. Plaintiff believes and therefore avers that Defendants acted in accord with
the long-standing custom and practices of the APD, which attempted to
ensure that the Heckman cell phone video was not reviewed, nor
considered, during any use of force review by any Team, the assigned
investigator, the supervisor, the chain of command, the Office of
Professional Services, nor any final decision-maker, in this case.

192. Likewise, Plaintiff believes and therefore avers that the Defendants acted
together, and in accord with the long-standing custom and practices of the
APD which insured that this video was not reviewed, nor considered by
the Office of Internal Affairs, any I.A. investigator, reviewer or, decision-
maker.

193. If the APD Internal Affairs and APD Office of Professional Standards
reviewed the video, it is believed and therefore averred that as part of the
continuing conspiratorial cover-up, they consciously concealed and/or

omitted its existence from their investigative reports in order to conceal independent evidence of the Defendants wrongdoing in this case.

194. This all constitutes clear evidence of a civil conspiracy engaged in by the Defendants and Does (those co-conspirators who are presently unidentified), who agreed to, and did, conceal independent evidence of the Defendant Officers' wrong-doing in this case.

195. Each one of the foregoing intentional acts and/or intentional omissions, evidences a meeting of the minds and an understanding between the Defendant Officers, which has as its successful object, the deprivation of the constitutionally protected rights of the Plaintiff.

196. It is also clear from the foregoing that the Defendants, and each of them together:

    a.  engaged in a single plan, the essential nature and general scope of which was known by them;

    b.  executed that plan in a coordinated way and by a common design which had as its probable and nature consequence the violation of Plaintiff's Constitutional rights as set forth herein;

    c.  acted in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which was an agreement

between them to inflict a wrong against, or injury upon, Plaintiff as more fully set forth herein; and

d. as a direct and proximate result of the foregoing, and the overt acts described hereinbefore Plaintiff suffered the damages enumerated.

197. These actions and circumstances, pre-discovery, would, in and of themselves, warrant a reasonable fact finder in concluding that the Defendants, formed a conspiracy to deprive the Plaintiff of his Constitutionally protected rights because:

a. They formed a combination by which they, together, aided and abetted the commission of unconstitutional and criminal acts of assault committed by the Defendant Officers, as well as its cover-up;

b. This constitutes a "conspiracy"; and

c. By being state actors who used their conspiracy to deprive the Plaintiff of his Constitutionally protected civil rights as described, each is liable for the harms inflicted upon the Plaintiff as a result of their concerted actions.

198. This conspiracy, as it applied to the Plaintiff herein, was an express or implied agreement between the Defendants, to deprive the Plaintiff of his Constitutional rights, *inter alia*, to be free from excessive use of force.

199. The Defendants were voluntary participants in the common venture, understood the general objectives of the plan, and knew it involved the likelihood of the deprivation of Constitutional rights, accepted those general objectives, and then agreed, either explicitly or implicitly, to do their part to further those objectives.

200. The Defendants then did each, either act, or where there was a duty to act, refrained from acting, in a manner intended to facilitate the deprivation of Plaintiff's Constitutional rights as alleged.

201. An actual deprivation of those rights did occur to the Plaintiff resulting from the said agreement or common design, and as a foreseeable consequence thereof.

202. The Defendants, and each of them, are jointly and severally responsible for the injuries caused by their fellow co-conspirators even if, or when, their own personal acts or omissions did not proximately contribute to the injuries or other harms which resulted.

203. As a result of the civil conspiracy entered into and acted upon by these Defendants, Plaintiff suffered a deprivation of his Constitutional rights, and suffered damages as stated herein.

**WHEREFORE,** Plaintiff respectfully requests that this Honorable Court award judgment in Plaintiff's favor and against all Defendant Officers and Does,

48

jointly and severally, in an amount in excess of the One Hundred Fifty Thousand Dollar ($150,000.00) limit for arbitration in the Federal District Court for the Eastern District of Pennsylvania.

## COUNT VII
### 42 U.S.C. §1981
### Denial Of Equal Rights Under The Law
### *Against All Defendants*

204. The preceding paragraphs are incorporated herein by reference as though fully set forth.

205. In the actions described above the Defendants deprived the Plaintiff of rights protected by the Constitution of the United States of America, and the Defendants intended to deny the Plaintiff rights enjoyed by white citizens of the United States.

206. The supervisors, policy-makers and Defendant City were aware of the denial of equal rights under the law or were willfully blind, and have developed a practice, policy and custom of depriving non-whites equal rights under the law, and either ignored or encouraged the Constitutional violations described above.

207. The Plaintiff suffered harm due to the Defendants' violations of his Constitutional rights with the intent to deprive him of rights enjoyed by white citizens.

208. 42 U.S.C. § 1981 confers on all persons the right to "the full and equal benefit of all laws and proceedings for the security of persons and property . . . ." 42 U.S.C. § 1981(a).

209. Section 1981 provides extensive equal protection rights, but is properly brought pursuant to Section 1983, which provides the remedy for violations of Section 1981 by state actors such as Defendant Officers.

210. Due to its legislative history and emphasis on equal treatment under the law, Section 1981 is designed to provide a remedy where as here, discrimination based upon race or alienage is presented as an element of the claim.

211. All the named Defendants are white and acted under color of state law, and with racial animus in their unlawful assault upon Plaintiff a person of African-American descent.

212. The Plaintiff was a member of a protected African-American class of persons and Defendants, acting as agents of the government, under color of state law, treated similarly situated individuals outside of the protected class differently, thereby evidencing purposeful discrimination against the Plaintiff.

213. The City of Allentown is liable for the actions of the Defendant Officers on the basis of the <u>Monell</u> assertions made hereinbefore and the fact that the Municipalities deliberate conduct was the moving force.

214. Likewise, Defendants Pawlowski and Fitzgerald are liable for the actions of Defendants based upon the allegations of their supervisory and policymaking liability made hereinbefore, and the fact that this Constitutional injury was recurrent to members of African-American heritage and because the acts of their subordinates were caused by their deliberate indifference, knowledge and acquiescence, which may fairly be said to represent official municipal custom or policy.

215. The Defendant Officers are liable for their personal involvement in the commission of the acts complained of here.

216. Further, the conduct exhibited by Defendant subordinate municipal officers and employees, which occurred on October 27, 2014, was not unexpected. Neither were they the deeds of independent, non-supervisory actors. But, rather, they constituted predictable behaviors of subordinates who operated with perceived impunity due to the deliberate indifference of their supervisors and policymakers, Pawlowski and Fitzgerald, and their joint policies, practices and customs, which operated as the moving force behind what the Officers believed to be their unaccountable effort to

engage in what had become, all to customary, Constitutional deprivations directed at a targeted member of the unprotected African-American community.

217.   Defendant City intentionally facilitated and concealed the unequal treatment of minorities by Defendants and other police officers, by deleting from documents produced in discovery in other civil rights cases, including in *Guerrido*, the race and ethnicity of minority members of the community that have been the subject of use of force by members of the APD.

218.   The likelihood is that, but for the alleged acts, omissions committed by the other Defendants, and the acquiescence in the denial of equal rights under the law animated by same, the injuries inflicted upon the Plaintiff would not have occurred.

219.   As a direct and proximate result, the Plaintiff was injured and suffered damages as stated herein, and further seeks damages under 42 U.S.C. § 1981.

**WHEREFORE,** Plaintiff respectfully requests that this Honorable Court award judgment in Plaintiff's favor and against all Defendants, jointly and severally, in an amount in excess of the One Hundred Fifty Thousand Dollars ($150,000.00) limit for arbitration in the Federal District Court for the Middle District of Pennsylvania, together with punitive damages against Defendants in their individual

capacities and, such other relief, including injunctive relief, which the Court may find appropriate.

## COUNT VIII
### 42 U.S.C. §1985
### Conspiracy To Interfere With Civil Rights
### *Against All Defendants*

220. The preceding paragraphs are incorporated herein by reference as though fully set forth.

221. As described above, the Defendants conspired to deny the Plaintiff rights afforded non-African-American, white citizens, by unlawfully assaulting him and then conspiring to conceal what actually occurred.

222. This conspiracy was engaged in with the intent to deprive the Plaintiff of his Constitutional rights and equal protection of the law.

223. The Plaintiff suffered harm due to the Defendants' conspiracy to violate his Constitutional rights with the intent to deprive him of equal protection of the law.

224. As a direct and proximate result of said conspiracy, the Plaintiff was injured and suffered damages as stated herein, and further seeks damages under 42 U.S.C. § 1985.

225. Specifically, the agreement to deprive the Plaintiff of his rights was motivated by racially discriminatory animus on the parts of Defendants and reflected the custom and culture established within the Allentown

Police Department, encouraging its officers to engage in Constitutional deprivations directed at targeted members of the African-American community, such as Plaintiff.

226. Motives, much less motives that have racially discriminatory animus as their source, are not frequently broadcast at the moment they are acted upon – "racial animus is often difficult to prove because it relies on hidden and unconscious biases" – it is for this reason that such animus is generally identified by circumstantial evidence that the discriminatory offenders acted in accordance with such animus before or after the discriminatory behavior at issue, not only at the very moment of the challenged conduct.

227. Based upon information and belief, Plaintiff believes and therefore avers that a reasonable fact-finder, considering all the material facts, would reasonably conclude that the Defendants' selected the course of action which they followed here because of Plaintiff's race, and that such a conclusion would logically result from consideration of, *inter alia*, the following factors:

a. The racial composition of the parties, with the Plaintiff being African-American and the Defendant Officers and all other John/Jane Does, being Caucasian;

b. That discovery will reveal that Plaintiff was not the only African-American treated in this way by members of the Allentown Police Department, and by Defendant Ammary in particular;

c. The Defendants, based upon information and belief, have engaged in prior acts of false arrest and physical abuse against those of Plaintiff's heritage, and have done so in disproportionate numbers when compared to those of non-African-American heritage;

d. Upon Information and belief, Defendant Ammary and other Defendants have a history of referring to persons of African-American heritage in racially derogatory and discriminatory terms in casual conversation with others as well as during the performance of their police duties; the City of Allentown and its agents have intentionally attempted to conceal the racial heritage of police victims in prior plaintiff's discovery attempts, in other federal litigation alleging racial discrimination;

e. The Defendants' conduct cannot be viewed in isolation, but must be considered as part of a sworn force whose racially discriminatory history against African-Americans is well-documented and supported by statistically significant evidence, which mirrors the racial animus of the Defendants;

f. The City of Allentown and the APD and its officers, have been the recipients of numerous citizen complaints and law suits which have alleged racially-based discrimination and none of them has made any significant effort to remediate the conduct giving rise to those claims; and,

g. The City of Allentown and its police department have failed to solicit and/or hire members of Plaintiff's racial class in numbers proportionate to members of the Allentown community which it is supposed to serve.

228. The above factors, individually, would permit a reasonable jury to believe that the unlawful and unconstitutional acts committed by Defendants were motivated by racially discriminatory animus, which was carried out as part of a preconceived scheme or common understanding to deprive the Plaintiff, directly or indirectly, of the equal protection of the law. However, when combined, all these factors lead to the unavoidable conclusion that such was the case.

229. Defendant Officers are liable for their personal involvement in the commission of the acts complained of here.

230. Defendants, the City of Allentown, Mayor Pawlowski and Chief Fitzgerald, are liable for the acts of Defendant Officers pursuant to the claims of Municipal Liability (Monell), and Policymaker and Supervisory Liability

expressly set forth herein, and which are incorporated by reference as if set forth *et extenso* here.

231. Further, the conduct exhibited by Defendant subordinate municipal officers and employees, which occurred on October 27, 2014, was not unexpected. Neither were they the deeds of independent, non-supervisory actors. But, rather, they constituted predictable behaviors of subordinates who operated with perceived impunity due to the deliberate indifference of their supervisors and policymakers, Pawlowski and Fitzgerald, and their joint policies, practices and customs, which operated as the moving force behind what the Officers believed to be their unaccountable effort to engage in what had become, all too customary, Constitutional deprivations directed at a targeted member of the unprotected African-American community.

232. The likelihood is that, but for the alleged acts and omissions committed by the other Defendants, the injuries inflicted upon the Plaintiff would not have occurred.

**WHEREFORE,** Plaintiff respectfully requests that this Honorable Court award judgment in Plaintiff's favor and against all Defendants, jointly and severally, in an amount in excess of the One Hundred Fifty Thousand Dollars ($150,000.00) limit for arbitration in the Federal District Court for the Eastern District of

Pennsylvania, together with punitive damages against Defendants in their individual capacities and, such other relief, including injunctive relief, which the Court may find appropriate.

**COUNT IX**
**42 U.S.C. §1985 - §1986**
**Failure To Prevent Actions Taken Under § 1985 - § 1986**
***Against All Defendants***

233.  The preceding paragraphs are incorporated herein by reference as though fully set forth.

234.  Defendants including John/Jane Does, acted as part of a conspiracy to interfere with Decedent's Civil Rights, violating 42 U.S.C. § 1985(3), which imposes civil liability on individuals who conspire to deprive "any person . . . of the equal protection of the laws, or equal privileges and immunities under the laws."

235.  In this regard, the Defendant Officers entered into a conspiracy, the elements of which are detailed hereinbefore in Count VI.

236.  The Defendant Officers were motivated by a racially based discriminatory animus in depriving Plaintiff, an African-American of his Constitutional rights, including his deprivation of the equal protection of the laws.

237.  The Defendant Officers acted in furtherance of the conspiracy by allowing and then covering up their unlawfully assaults upon Plaintiff, which occurred without justification, provocation or reason, in violation of

Plaintiff's Constitutional rights under the Fourth Amendment to the United States Constitution.

238. The Plaintiff has suffered harm as described herein from the Defendants' failure to prevent the conspiracy to violate his Constitutional rights, for which Plaintiff seeks damages under 42 U.S.C. § 1986.

239. Defendant Officers are liable for their personal involvement in the commission of the acts complained of here.

240. Defendants, the City of Allentown, Mayor Pawlowski and Chief Fitzgerald, are liable for the acts of Defendant Officers pursuant to the claims of Municipal Liability (Monell), and Policymaker and Supervisory Liability expressly set forth herein, and are incorporated by reference as if set forth *et extenso* here.

241. Further, the conduct exhibited by Defendant subordinate municipal officers and employees, which occurred on October 27, 2014, was not unexpected. Neither were they the deeds of independent, non-supervisory actors. But, rather, they constituted predictable behaviors of subordinates who operated with perceived impunity due to the deliberate indifference of their supervisors and policymakers, Pawlowski and Fitzgerald, and their joint policies, practices and customs, which operated as the moving force behind what the Defendant Officers believed to be their unaccountable

effort to engage in what had become, all to customary, Constitutional deprivations, directed at a targeted member of the unprotected African-American community.

242.   The likelihood is that, but for the alleged acts and omissions committed by the other Defendants, in their failure to prevent actions taken under 42 U.S.C. § 1985 - § 1986, the injuries inflicted upon the Plaintiff would not have occurred.

**WHEREFORE,** Plaintiff respectfully requests that this Honorable Court award judgment in Plaintiff's favor and against all Defendants, jointly and severally, in an amount in excess of the One Hundred Fifty Thousand Dollars ($150,000.00) limit for arbitration in the Federal District Court for the Eastern District of Pennsylvania, together with punitive damages against Defendants in their individual capacities and, such other relief, including injunctive relief, which the Court may find appropriate.

**COUNT X**
**42 U.S.C. §1983**
**Violation of Fourteenth Amendment Due Process Rights**
***Against Individual Defendant Officers and City (Monell)***

243.   The preceding paragraphs are incorporated herein by reference as though fully set forth.

244.   The Defendant Officers conspired with each other and deliberately fabricated, suppressed and attempted to destroy evidence, all in an effort

to justify their unconstitutional arrest of, and unconstitutional assault upon, the Plaintiff.

245.   Defendant Holveck, *inter alia*, swore out and filed a knowingly false, fabricated, and misleading Affidavit of Probable Cause, Criminal Complaint and Offense Report wrongfully accusing the Plaintiff of criminal conduct which he did not commit.

246.   Defendant Holveck's false, fabricated and misleading documents were intentionally and wrongfully cooberated by similar fabrications placed into the officially entered Offense Reports authored individually by Defendants Ammary, Boehm, and Bowland.

247.   In addition to fabricating false evidence against Plaintiff in his Offense Reports, it is believed and also averred that these fabrications and falsehoods were repeated, at least in part, by Defendants in any Use of Force Reports, Office of Professional Standards and/or Internal Affairs narratives they may have provided.

248.   The aforesaid fabricated evidence was used as a basis for the filing of criminal charges that would not have been filed and/or pursued without its use.

249.   Each of the Defendant Officers, as proponents of their own fabricated evidence against Plaintiff, was aware that their own statements were

incorrect and offered in bad faith in an effort to secure an unjust conviction of Plaintiff.

250.  The fabricated evidence was so significant that it could have affected the outcome of the criminal case and, in fact, in this instance, without the Defendants' fabricated evidence, Plaintiff would not have feared a likely adverse jury verdict, rendering the Defendants' fabrications the prime consideration for the Plaintiff's entry of his pleas to the unfounded summary offenses of Drinking In Public and Public Drunkenness.

251.  In fact, there exists more than a reasonable likelihood that absent the Defendants' fabricated statements, oaths and reports, all of which falsely portrayed Plaintiff as an active and assaultive resistor (rather than the victim of police abuse which he actually was), the Plaintiff would not have been criminally charged.

252.  Defendant Ammarys rage continued after his assaults upon Plaintiff and he also forcefully and unconstitutionally arrested Eli Heckman for publicly recording his and other Defendants' unconstitutional assaults upon Plaintiff, and then, attempted to destroy Heckman's cell phone and the damning, irrefutable recorded evidence of the serious police misconduct which it contained.  While Defendant Ammary succeeded in interfering with, and prematurely terminating, Heckman's cell phone recording by his,

Ammary's, unprovoked and unconstitutional assault upon, and arrest of, Heckman, and the attempted destruction of his cell phone, the recording survived.

253. Plaintiff is entitled to the Fourth Amendment's protection against unlawful seizure pre-trial, and to the due process of law guaranteed to him by the Fourteenth Amendment, during the entire criminal proceedings, through and after the imposition of sentence.

254. The Defendants' fabrication and Defendant Ammary's attempted destruction of evidence, is an affront to due process of law, and state actors like the Defendant Officers who seek to frame citizens like Plaintiff, undermine fairness, and are responsible for the corruption of the truth-seeking function of the trial process, and thereby provide a stand-alone fabricated evidence claim against Defendant Officers under the due process clause of the Fourteenth Amendment.

255. The Defendant Officers engaged in this fabrication and attempted destruction of evidence intentionally, willfully, wantonly and with a reckless disregard for the rights of Plaintiff, subjecting each Defendant Officer not only to the compensatory damages claimed herein, but also to punitive/exemplary damages.

256.   The Defendant City is liable under the doctrine enunciated in Monell for all the acts and/or omissions attributed to the individual Defendant Officers for the reasons more fully expressed in COUNT XII, "Municipal Liability", which is incorporated herein as if fully set forth.

**WHEREFORE,** Plaintiff respectfully requests that this Honorable Court award judgment in Plaintiff's favor against Defendant Officers, and the City of Allentown, jointly and severally, in an amount in excess of the One Hundred Fifty Thousand Dollar ($150,000.00) limit for arbitration in the District Court for the Eastern District of Pennsylvania, together with punitive damages against all Defendant Officers in their individual capacities.

### COUNT XI
### 42 U.S.C. §1983
### Supervisory Liability-Policymaker Liability
### *Against Defendants Pawlowski, Fizgerald and Does, Individually*

257.   The preceding paragraphs are incorporated herein by reference as though fully set forth.

258.   At all times pertinent to the claims made herein, Mayor Pawlowski, Chief Fitzgerald and John/Jane Does 1-X occupied both policymaking and supervisory positions relative to the City of Allentown's Police Department and the subordinate members of its force, concerning which all other individual Defendants were officers, members and employees.

64

259. Generally speaking, Mayor Pawlowski retained ultimate responsibility over the operations of the Police Department as the executive of Allentown, a City of the Third Class operating under an Optional Plan B form of government wherein Mayor Pawlowski shares both supervisory and policymaking responsibilities with Chief Fitzgerald when it comes to Allentown's Police Department which the Chief heads.

260. In practice, Mayor Pawlowski retains ultimate responsibility to supervise and monitor the overall operation of the Police Department, and Chief Fitzgerald is responsible to supervise and monitor the day-to-day operations of the Department. Each has final decision-making authority with regard to the operational conduct of the subordinate members of the police force; each retained the authority to measure the conduct and decisions of police subordinates; each played a role in fashioning and implementing Departmental police policies, practices, procedures and customs, and often did so in consultation with one another. Each is a person whose actions may fairly be said to represent official municipal policy or custom.

261. Defendants Pawlowski and Fitzgerald implemented several policies and practices that created an unreasonable risk of Constitutional violations on the part of their subordinates, including specifically, the individual

Defendants here; and, their failure to change those policies or employ corrective practices is a direct cause of the unconstitutional conduct, which was inflicted upon the Plaintiff.

262.  Most specifically among these practices was for Pawlowski and Fitzgerald to ignore the pattern and history of Constitutional abuses committed by the police officers under their supervision.

263.  The existing custom and practice followed by Defendants Pawlowski and Fitzgerald was, *inter alia*, largely to ignore Constitutionally implicated complaints about the conduct of their officers; to fail to properly investigate them; to fail to take corrective and disciplinary action, to allow for the cover-up of police misconduct; to adopt policies which are designed to protect officers and the City from civil liability rather than to protect the citizenry from their unlawful acts; to stifle citizens' complaints; to conceal or otherwise make it extremely difficult to recover information which should be immediately available for policy maker and supervisory review and action; to settle cases requiring the gaging of victims of police misconduct and their counsel so as to deceive the public and prohibit them from knowing the dangerous nature of police officers which the City employs; and to settle cases requiring the dismissal of liable police officers

in exchange for placing the liability amorphously upon the City and requiring language admitting no liability.

264. This deliberate indifference to the violations of their Constitutionally protected rights not only reinforced the justifiable belief among the citizenry that it was useless to register complaints about police misconduct and abuse, but, it created further ill-will, and even more significantly, sent a message to the members of the police force that their violations of the community's Constitutional rights would be tolerated and go unpunished, thereby encouraging further and even more serious violations, and an unreasonable risk of just the sort of harms that were visited upon Plaintiff as described herein.

265. The institutionalization of a culture of constitutionally abusive police misconduct within the Allentown Police Department was so obvious as to be apparent to any reasonable supervisor or policymaker, including Defendants Pawlowski and Fitzgerald; and, their indifference to the risks that these customs, practices, and supervisory procedures presented, were the moving force which resulted in the Constitutional violations suffered by the Plaintiff.

266. This was no more true than with the Defendants' deliberate indifference to the need to provide its officers, including most especially, the Defendants

67

here, with more or better training with regard to the safeguards afforded by the Fourth Amendment, including particularly the prohibitions regarding search and seizure and the use of excessive force.

267. Defendants Pawlowski and Fitzgerald were aware that their officers routinely confront situations that may require the use of force, including deadly force, that such situations often involve difficult decisions on the part of officers about how much force to use or whether to use force at all, and that excessive force liability will frequently result if officers use more force than is reasonably necessary under the circumstances.

268. Defendant's Pawlowski and Fitzgerald were aware of the numerous incidents of the excessive use of force that had been committed by members of the Department in the past, including those involving the Defendants *sub judice*, and failed to subject them and other offenders to appropriate evaluation, discipline and remedial training, thereby demonstrating a tolerance of past and/or ongoing police misbehavior, through knowledge and acquiescence in their subordinates' Constitutional violations.

269. Moreover, the conduct exhibited by Defendants on October 27, 2014, was not that of unexpected, independent, non-policymaking actors, but constituted deliberate and predictable acts of subordinates who operated

with a rightly perceived impunity due to the ongoing deliberate indifference of their supervisors and policymakers, Defendants Pawlowski and Fitzgerald, and their well-established practices, policies and customs which operated as the moving force behind what the officers thought would be an overlooked and tolerated effort to engage in what had become customary Constitutional deprivations.

270. The lacking supervisory practices or procedures (or policies), which Defendants Pawlowski and Fitzgerald were required at a minimum to promulgate, implement, monitor and, if necessary, modify, include, *inter alia*, the following: a heightened supervisory sensitivity and vigilance for uncovering and eradicating Constitutional violations, especially those that are driven by racial animus; procedures whereby members of the public who have experienced Constitutional police violations are encouraged to access a simple, convenient, non-retaliatory, and responsive procedure to register their complaints and receive prompt, objective responses; procedures carefully cataloging complaints (legal, formal and informal) and their respective outcomes – by name, nature of claim, and resolution and corrective action if any; procedures for the efficient, effective, objective investigations of all claims and complaints, for their analysis, and requiring the prompt and open imposition of disciplinary, corrective action

or policy or procedural change; procedures for promptly responding to those who registered complaints and for securing feedback concerning the resolution reached (necessary to restore good community relations and to encourage the belief that their complaints will not be ignored); procedures for racial/cultural sensitivity training; procedures for the active pursuit and enlistment of police officers of African-American heritage and with multi-lingual abilities; procedures requiring remedial training in Fourth Amendment safeguards including the use of force limitations, including the use of Tasers; procedures for the complete statistical analysis of police complaints from whatever source, I.A. outcomes, use of force incidents, the race of use of force victims, criminal charges filed, prosecutions pursued and criminal convictions secured, etc.; procedures which permit the prompt identification and retrieval of all complaints, outcomes, and evidence, (including videos) on an individual officer basis; etc.

271. The existing customs within the Allentown Police Department created an unreasonable risk of injury to citizens such as Plaintiff, in the absence of the above-specified supervisory practices.

272. Defendants Pawlowski and Fitzgerald were aware that the risks existed because they were obvious and because they had previously resulted in constitutional claims and violations by officers under their supervision.

273. Defendants Pawlowski and Fitzgerald were indifferent to these risks, given their failure to punish or otherwise remediate past conduct which resulted in adverse consequences from those risks.

274. The underlying Constitutional violations inflicted on the Plaintiff resulted from Defendants Pawlowski and Fitzgerald's failure to employ the above, and other, supervisory practices, or policies.

275. As a result of the deficient supervision and policymaking of the Defendants, Plaintiff suffered the damages alleged herein.

**WHEREFORE,** Plaintiff respectfully requests that this Honorable Court award judgment in Plaintiff's favor and against Defendants Pawlowski and Fitzgerald and John/Jane Doe supervisors, jointly and severally, in an amount in excess of the One Hundred Fifty Thousand Dollars ($150,000.00) limit for arbitration in the Federal District Court for the Eastern District of Pennsylvania, together with punitive damages against Defendants in their individual capacities and, such other relief, including injunctive relief, which the Court may find appropriate.

## COUNT XII
## 42 U.S.C. § 1983
## Municipal Liability
### *Against The City Of Allentown*

276. The preceding paragraphs are incorporated herein by reference as though fully set forth.

277. Prior to October 27, 2014, the Defendant City of Allentown either failed to develop policies or, developed and maintained policies and/or customs exhibiting deliberate indifference to the Constitutional rights of persons in Allentown, which caused the aforesaid violations of Plaintiff's Constitutional rights.

278. By way of example only, on September 29, 2011, Defendant Ammary forcefully encountered a bi-racial 14 year old student, as she was leaving her high school in Allentown. Ammary arrested her, after the youth put her hands up in the air, in an act of submission, Ammary without provocation, and at the time when she posed no risk of harm to Ammary, drew and fired his Taser weapon at the youth's lower abdomen and groin, embedding Taser barbs into her body and causing her to collapse to the macadam street.

279. Eventhough the City of Allentown was forced to compensate the teenager for the damages resulting from this unconstitutional arrest, and although an expert in police use of force advised the City and APD in 2013, that Defendant Ammary's use of force and use of Taser against the aforementioned 14 year old student was excessive and objectively unreasonable, no discipline was brought against Ammary by APD and no remedial training was provided to Ammary.

280. The violations of Plaintiff's Constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution, Plaintiff's damages, and the conduct of the individual Defendants were directly and proximately caused by the actions and/or inactions of Defendant City of Allentown, which has encouraged, tolerated, ratified, and has been deliberately indifferent to, *inter alia*, the following policies, patterns, practices, and customs, and to the need for more or different training, supervision, investigation, or discipline in the areas of:

a. The use of force by police officers;

b. The proper exercise of police powers, including, but not limited to the making of an arrest, and the use of force;

c. The monitoring of officers whom it knew or should have known were suffering from emotional, psychological, and/or drug dependent problems that impaired their ability to function as officers;

d. The failure to identify and take remedial or disciplinary action against police officers who were the subject of prior civilian or internal complaints of misconduct, such as, *inter alia*, Defendant Ammary.

e. Police officers' use of their status as police officers to employ the unreasonable use of force or to achieve ends not reasonably related to their police duties;

    f.  The failure of police officers to follow established policies, procedures, directive, and instructions regarding arrests and the use of force under such circumstances as presented by this case;

    g.  The failure to properly sanction or discipline officers who are aware of and conceal, and/or aid and abet, violations of Constitutional rights of citizens by other Allentown police officers; and

    h.  The practice among Allentown police officers of subjecting citizens to unlawful force, with the intention of precluding such individuals from instituting civil claims by falsifying the events which occurred, in official reports and by conducting sham investigations.

281.  It was also the policy and/or custom of the Defendant City of Allentown to inadequately and improperly investigate citizen complaints of police misconduct, and acts of misconduct were instead tolerated and/or justified by the City of Allentown, including, but not limited to, complaints of citizens, especially minority citizens.

282.  It was also the policy and/or custom of the Defendant City of Allentown to inadequately screen during the hiring process (including psychological and drug screening) and to fail to intermittently test thereafter, and to inadequately train and supervise its police officers, including Defendant police officers, thereby failing to adequately discourage further

Constitutional violations on the part of its police force in general, and Defendant Officers in particular.

283. The Defendant City of Allentown did not require or demand appropriate in-service training or re-training of officers who were known to have engaged in police misconduct or who were known to encourage or tolerate same.

284. In fact, no officer of any rank, in any department of the APD, ever came to a training director and recommended any changes in the officer training to prevent the excessive use of force, eventhough excessive force claims were numerous and, eventhough the City of Allentown was required to pay out more than a half million dollars in excessive force claims in the recent past.

285. The Defendant City of Allentown also did not adopt needed policies, which should have been intended and calculated to avoid the Constitutional violations referred to herein, including specifically those that follow.

286. The lacking practices or procedures (or policies), which Defendant City of Allentown was required, at a minimum, to promulgate, implement, monitor and, if necessary, modify, include, *inter alia*, the following: a heightened supervisory sensitivity and vigilance for uncovering and

eradicating unconstitutional violations, especially those that are driven by overly aggressive officers and racial animus; procedures whereby members of the public who have experienced Constitutional police violations are encouraged to access a simple, convenient, non-retaliatory, and responsive procedure to register their complaints and receive prompt, objective responses; procedures carefully cataloging complaints (legal, formal and informal) and use of force, and their respective outcomes – by name, nature of claim, evidence available and resolution, including corrective action, if any; procedures for the efficient, effective, objective investigations of all claims and complaints, their analysis and requiring the prompt and open imposition of disciplinary, corrective action, remedial training, or policy or procedural change; procedures for promptly responding to those who registered complaints, or who self-reported, and for securing citizen feedback concerning the resolution reached (necessary to restore good community relations and to encourage the belief that their complaints will not be ignored); procedures for racial/cultural sensitivity training; procedures for the active pursuit and enlistment of police officers of African-American and other minority heritages and with multi-lingual abilities; procedures requiring remedial training in Fourth and Fourteenth Amendment safeguards including citizen's Constitutional rights to be free

from unlawful search and/or seizure, and the use of force limitations; procedures for immediately identifying circumstances and the identity of officers who are excessive force prone and/or who file fabricated or incomplete reports; procedures for conducting both internal and external objective reviews of all claims of unconstitutional or otherwise unlawful police conduct; procedures for identifying officers who are in need of remedial training; procedures for testing the validity and efficiency of I.A. and O.P.S. operations; and procedures for effectively and independently, monitoring officers' drug (including steroid) or alcohol abuse (such as random testing) and for monitoring and testing officer's mental health (including anger management issues).

287.  The existing customs within the Allentown Police Department created an unreasonable risk of injury in the absence of the above-specified supervisory practices and procedures.

288.  The City of Allentown policy makers were aware that these risks existed because they were obvious and because these risks had resulted in Constitutional harms, which had occurred previously under their supervision.

289. The City of Allentown policy makers were indifferent to these risks, given their failure to eliminate or remediate those responsible for the past unconstitutional consequences of said risks.

290. It was the policy and/or custom of the Defendant City of Allentown to allow and even promote the excessive use of force by its officers, as well as the commission of the other Constitutional violations described herein, including the cover-up of such acts and/or omissions.

291. In spite of numerous and various excessive force complaints made against the APD relating to arrests, physical contact with citizens, and the use of manual devices which deploy force, the City and APD have never proposed any changes to the APD's Use of Force Policy to curb excessive use of force, eventhough the City of Allentown was required to pay out more than a half million dollars in excessive force claims in the recent past.

292. Although an expert in police use of force advised the City and APD in 2013 that the City had in place a defective and unlawful use of force policy and practice that grants unfettered discretion to officers to use force and which expressly permits the use of force on non-assailants, on resistors, and on individuals who have not actually assaulted police officers but merely defended themselves against excessive force, the City and APD

never changed its use of force policy to protect its citizens from police abuse.

293. Although an expert in police use of force advised the City and APD in 2013 that the City and APD's defective policies and practices, relating to the use of Tasers, amounts to a fatal accident waiting to happen, the City and APD never changed its use of force policy relating to Taser use or its training in the use of Tasers.

294. It is believed and therefore averred that other experts have similarly advised the City and APD of its unlawful force policy, and its defective policy relating to Taser use, but have ignored these experts and brought no change to remedy its unlawful policies and practices.

295. Eventhough ten out of 100 Taser deployments in Allentown actually resulted in injuries to the Tased individual, APD's Taser Review Board has never found that an officer's use of the Taser was inappropriate, or that its Taser policy should be changed.

296. As a result of the above described policies and customs and failure to enforce and/or adopt necessary and appropriate policies, police officers of the Defendant City of Allentown, including the Defendants, believed that their actions would not be properly monitored by supervisory officers or

the City and reasonably believed that their misconduct would not be investigated or sanctioned, but would be tolerated and even encouraged.

297. As stated hereinbefore, the promulgation of general orders, policies, or practices which are directed at creating potential defenses for officers' unconstitutional acts, including the assaultive and conspiratorial acts alleged herein, rather than general orders, policies or practices which are directed at identifying, punishing and eliminating those unconstitutional acts, and which ignore the Constitutional protections guaranteed to all citizens, constitutes irrefutable evidence of the City, its supervisors and decision-makers, deliberate indifference to those rights.

298. The above described deficient policies and customs, and the failure to enforce and/or adopt necessary and appropriate policies, demonstrates a deliberate indifference on the part of the policymakers of the Defendant City of Allentown, and served as the moving force behind, and the cause of, the violations of the Plaintiff's rights as alleged herein, as well as the claimed damages which resulted therefrom.

299. But for this deliberate indifference, the injuries, which were suffered by the Plaintiff, would, in all likelihood, not have occurred.

**WHEREFORE,** Plaintiff respectfully requests that this Honorable Court award judgment in Plaintiff's favor and against the Defendant City of Allentown,

jointly and severally, in an amount in excess of the One Hundred Fifty Thousand Dollar ($150,000.00) limit for arbitration in the Federal District Court for the Eastern District of Pennsylvania, together with punitive damages against Defendant City of Allentown in its individual capacity and, such other relief, including injunctive relief, which the Court may find appropriate.

## COUNT XIII
### State Assault and Battery
#### *Against Defendants*

300. The preceding paragraphs are incorporated herein by reference as though fully set forth.

301. Defendants intentionally assaulted and battered Plaintiff as stated hereinbefore, and Defendants were agents and employees of the City of Allentown at the time of their unlawful acts.

302. As a result of Defendants' assault and battery, Plaintiff suffered the damages stated herein.

**WHEREFORE,** Plaintiff respectfully requests that this Honorable Court award judgment in Plaintiff's favor and against Defendants Officers and the City, jointly and severally, in an amount in excess of the One Hundred Fifty Thousand Dollar ($150,000.00) limit for arbitration in the Federal District Court for the Eastern District of Pennsylvania, together with punitive damages against Defendants in their

individual capacities and, such other relief, including injunctive relief, which the Court may find appropriate.

## COUNT XIV
### False Arrest and Illegal (False) Imprisonment
#### *Against Individual Defendants*

303.  The preceding paragraphs are incorporated herein hereby reference as though fully set forth.

304.  Defendant Ammary illegally arrested Plaintiff and further illegally imprisoned Plaintiff.

305.  As a result of his false arrest and illegal imprisonment, Plaintiff suffered the damages stated herein.

**WHEREFORE,** Plaintiff respectfully requests that this Honorable Court award judgment in Plaintiff's favor and against Defendants, jointly and severally, in an amount in excess of the One Hundred Fifty Thousand Dollar ($150,000.00) limit for arbitration in the Federal District Court for the Eastern District of Pennsylvania, together with punitive damages against Defendants in their individual capacities and, such other relief, including injunctive relief, which the Court may find appropriate, together with punitive damages against Defendants in their individual capacities and, such other relief, including injunctive relief, which the Court may find appropriate.

## COUNT XV
### State Civil Conspiracy
### *Against Defendants including John/Jane Does*

306. The preceding paragraphs are incorporated herein by reference as though fully set forth.

307. The referenced Defendants conspired to engage in the tortious State claims alleged hereinbefore, whereby each Defendant acted in concert, pursuant to an agreement, to cause the stated harms or in some way facilitated the conspiratorial objective of inflicting the resulting harms, upon the Plaintiff, by their own acts or omissions or by those of fellow co-conspirators.

308. As a result of the aforesaid conspiracy engaged in by Defendants, Plaintiff suffered the damages stated herein.

**WHEREFORE,** Plaintiff respectfully requests that this Honorable Court award judgment in Plaintiff's favor and against Defendants including Defendant Does, jointly and severally, in an amount in excess of the One Hundred Fifty Thousand Dollar ($150,000.00) limit for arbitration in the Federal District Court for the Eastern District of Pennsylvania, together with punitive damages against Defendants in their individual capacities and, such other relief, including injunctive relief, which the Court may find appropriate.

## COUNT XVI
### State Constitutional Violations
### *Against All Defendants*

309. The preceding paragraphs are incorporated herein by reference as though fully set forth.

310. The conduct of the Defendants, as alleged herein, was violative of the Plaintiff's rights under Article I, Section 1, Article I, Section 8 and Article I, Section 9 of the Constitution of the Commonwealth of Pennsylvania.

311. As a result of the Defendants' conduct, which was violative of the guarantees afforded Plaintiff under the Pennsylvania Constitution, Plaintiff suffered the damages stated herein.

**WHEREFORE,** Plaintiff respectfully requests that this Honorable Court award judgment in Plaintiff's favor and against all Defendant Officers, and the City of Allentown, jointly and severally, and in the form of equitable relief.

### OTHER

312. Plaintiff respectfully requests a jury of twelve (12) jurors to deliberate upon the within causes of action.

313. The within case is not subject to arbitration.

314. Where permitted, the Plaintiff demands reasonable legal fees, costs, interest, expenses, delay damages, compensatory damages, punitive damages and any other damages deemed appropriate by the Court.

315. Plaintiff requests that this Honorable Court issue declaratory and injunctive relief, as appropriate, declaring the within described practices to be unlawful, and enjoining their present and continued employment and effects.

**WHEREFORE,** Plaintiff respectfully requests that this Honorable Court for each Count alleged:

a. Award compensatory damages to Plaintiff against the Defendants, jointly and severally, in an amount in excess of $150,000.00 exclusive of interest and costs;

b. Award punitive damages to Plaintiff against the individual Defendants, in their individual capacities, jointly and severally, in an amount in excess of $150,000.00 exclusive of interest and costs;

c. Award reasonable attorney's fees and costs to the Plaintiff, as may be awardable pursuant to 42 U.S.C. Section 1988, the Civil Rights Attorney's Fees Award Act of 1976, or any other appropriate statutory provisions;

d. Enter an Order enjoining Defendants from engaging in the future in the conduct identified in the Complaint as violative of 42 U.S.C. §§ 1981, 1983, 1985, 1986, 1988, the 4th and 14th Amendments of the Constitution of the United States, and Article I, Section 1, Article I,

Section 8, and Article I, Section 9 of the Pennsylvania Constitution; and further affirmatively requiring the Defendant City of Allentown to engage in appropriate remedial efforts to adopt, and enforce, policies for the Allentown Police Department that are calculated and intended to preclude the conduct alleged to have been engaged in by the Defendants named herein and providing for the independent monitoring of same; and

e. Award such other and further relief, as this Court may deem appropriate.

Respectfully Submitted,

Dated: October  , 2016

By: _____

Robert E. Goldman, Esquire
PA Attorney I.D. # 25340
535 Hamilton Street, Suite 302
Allentown, PA 18101
(610) 841-3876
reg@bobgoldmanlaw.com
Attorney for Plaintiff

By: _____

Joshua E. Karoly, Esquire
PA Attorney I.D. # 206076
527 Hamilton Street
Allentown, PA 18101
(610) 437-1252
j.karoly@karolyfirm.com
Attorney for Plaintiff